U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV - 8 2017

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RITCHIE HERNANDEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:16-CV-147-A |
| | § | |
| LORIE DAVIS, Director,[1] | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Ritchie Hernandez, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

### I. Procedural History

In June 2004 petitioner was indicted in Tarrant County, Texas, Case No. 1287601D, for the murder of Charles Perry. (Clerk's R. at 3.) Following a jury trial, the jury found petitioner guilty and assessed his punishment at 35 years'

---

[1]Effective May 4, 2016, Lorie Davis replaced William Stephens as director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Pursuant to Federal Rule of Civil Procedure 25(d), Davis is automatically substituted as the party of record.

confinement. (Id. at 74.) The Second District Court of Appeals of Texas affirmed the trial court's judgment on the jury verdict, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review, and the United States Supreme Court denied his petition for writ of certiorari. (Docket Sheet at 1-2.) Petitioner also filed a state postconviction application for writ of habeas corpus challenging his conviction, which the Texas Court of Criminal Appeals denied without written order on the findings of the trial court. (Action Taken)

The state appellate court summarized the evidence in the case as follows:

> On March 7, 2004, Lisa Jones and her brother were driving in the Westpoint area of Fort Worth when Jones saw a man covered in blood lying face-down in a ditch. Jones saw another man, later identified as appellant, sitting behind the wheel of a car on the side of the road near the ditch. Jones pulled over to the nearest stop sign and called 9-1-1.

> While Jones waited for the police to arrive, she saw appellant get out of the car, walk over to the man in the ditch, try to lift him, fail, and lay the man back on the ground. Appellant, who appeared to be in shock, next walked back to his car, leaned on its bumper, rocked back and forth, and attempted to use his cell phone.

> Later, Latasha Morgan, a nurse's aide, also drove by. Morgan saw appellant kneeling on the ground near a body and crying hysterically. Morgan got a towel from her car to use as a pressure bandage, brought the towel to appellant, and told appellant to apply pressure. Appellant did not comply, and told Morgan that "[t]hose niggers did it."

> When the paramedics arrived, they noticed that the victim, who was later identified as Charles Perry, had

several deadly chest wounds. Although the paramedics took Perry to the hospital, Perry was dead before he left the scene.

Before Perry was transported, however, Officer Shawn Elliott from the White Settlement Police Department stopped at the scene and saw appellant lying over Perry in the ditch. Both appellant and Perry were covered in blood. Officer Elliott asked appellant what happened, and appellant said that he had picked up Perry from a motel on Highway 80. According to appellant, Perry was already injured when he picked him up. When Officer Elliott asked why appellant did not transport Perry to a hospital, appellant said that Perry did not want to go because he had some illegal narcotics on him. Officer Elliott next asked appellant for more details about where the assault had taken place, and this time appellant stated that he had picked up Perry at Rosedale and I-35, which is not near Highway 80.

An autopsy revealed that Perry died of multiple stab wounds and blunt force trauma to the head. Three days after Perry died, the officers obtained consent to search a fenced-off area near where Perry's body was found; during this search, they found a butterfly knife with Perry's blood on it lying several feet from the nearby fence line. The knife contained the blood of at least one other person.

(Mem. Op. at 2-3, 5-8.)

## II. Issues

In one ground, petitioner claims that his trial counsel was ineffective by failing to investigate the butterfly knife allegedly used in the murder. In support, he asserts that

post-conviction forensic testing establishes that the knife allegedly used as the murder weapon was in fact incompatible with the victim's wounds. Had trial counsel investigated the matter and consulted with an expert, he would have ascertained as much. Counsel was profoundly ineffective on this basis because the location in which the knife was discovered was pointed to as crucial evidence in [his] guilt.

3

(Pet. at 6.)

### III. **Rule 5 Statement**

Respondent believes that the petition is timely filed, that the petition is not successive, and that petitioner has sufficiently exhausted his state-court remedies as to his claim. (Resp't's Answer at 7.) 28 U.S.C. §§ 2244(b), (d) & 2254(b)(1).

### IV. **Discussion**

#### A. *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established Supreme Court precedent or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Harrington*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1)

4

provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Further, when the Texas Court of Criminal Appeals denies a federal claim in a state habeas-corpus application without written opinion, a federal court may presume "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law, as determined by the Supreme Court of the United States" unless there is evidence that an incorrect standard was applied, in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Harrington,* 562 U.S. at 99; *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2003).

### B. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result

of the proceeding would have been different. *Strickland*, 466 U.S. at 688. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

The Supreme Court emphasized in *Harrington v. Richter* the manner in which a federal court is to consider an ineffective-assistance-of-counsel claim raised in a habeas petition subject to AEDPA's strictures:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

562 U.S. at 101 (quoting *Williams,* 529 U.S. at 410)). Accordingly, it is necessary only to determine whether the state courts' rejection of petitioner's ineffective assistance claims was contrary to or an objectively unreasonable application of *Strickland. Bell v. Cone,* 535 U.S. 685, 698-99 (2002); *Kittelson*

*v. Dretke,* 426 F.3d 306, 315-17 (5th Cir. 2005); *Schaetzle,* 343
F.3d at 443.

Petitioner's postconviction habeas counsel filed a motion
for an independent expert to examine the butterfly knife found at
the scene, and the motion was granted. (State Habeas R. 118-29.)
Ed Hueske, a forensic scientist, prepared a report opining that
the butterfly knife, a single-edged knife, was incompatible with
the victim's wounds and that the wounds were caused by a double-
edged knife. (Id. at 167-77.) Thus, petitioner amended his state
habeas application to include a claim that trial counsel was
ineffective for failing to investigate the matter and consult
with an expert. (Id. at 136.) The state responded that petitioner
presented no evidence, or specific facts, regarding Hueske's
training or experience indicating he had any specialized
knowledge in stab wounds. (Id. at 226.) Habeas counsel then
requested that Hueske provide his curriculum vitae and address
the issue of his expertise. (Id. at 336.) Hueske provided his
curriculum vitae and an affidavit, stating-

> Attached hereto is my CV and my qualifications on
> knife examinations. The facts stated in the report are
> true and correct. Knife wounds come under the general
> forensic heading of tool marks - pure and simple. There
> have been numerous publications in the forensic
> literature on the subject by firearm/tool mark
> examiners over the years. Additionally, over the last
> 42 years I have attended numerous forensic society
> meetings where the topic of knife wounds was presented
> and discussed. I included a copy of my article on knife
> blade impressions some time back re the Hernandez case.
> It is listed in my CV in the publications section

("Making Knife Blade Test Impressions," *SWAFS Journal,* 2007).

> I, as do other firearm/tool examiners, rely on a forensic pathologist for knife wound descriptions in addition to reviewing autopsy photographs of the wounds as in this case. The wound descriptions and photographic images are then compared to test impressions created as described in my 2007 paper on the subject. I would submit that most forensic pathologists rely on firearm/tool mark examiners to make forensic comparisons of suspect knives to stab/cut wounds per their written descriptions and scaled photographs. If I had been requested to testify, I would have appeared and testified as set out in my report.

(Id. at 336.)

Based thereon, the state submitted the following proposed findings of fact on the issue, which were adopted by the state habeas court, save for finding number 14 which was modified by the court as reflected below:

7. Edward Hueske has given an opinion that the butterfly knife found near the body is not the weapon that caused the injuries.

8. Applicant presents no evidence that Mr. Hueske has any specialized knowledge in stab wounds.

9. Applicant presents no evidence, specific facts, or authority, to support Mr. Hueske's conclusion that "[k]nife wounds come under the general forensic heading of tool marks – pure and simple."

10. Applicant presents no evidence, or specific facts, that Mr. Hueske has had any specialized training, degrees or certifications in the identification of stab wounds or pathology.

11. Mr. Hueske authored a paper, *Making Knife Blade Test Impressions*.

12. Mr. Hueske's article discusses the benefits of

using Bio-Foam™ to make test impressions for comparison to stab wounds.

13. Mr. Hueske's article does not present any evidence, or authority, that knife impressions in Bio-Foam™ mimic the wounds found on flesh-and-blood, alive and kicking, stabbing victims.

14. There is no evidence that Mr. Hueske's test impressions in Bio-Foam™ of the suspect knife are comparable to what damage the knife would have made on a living and moving victim.

15. Mr. Hueske's article does not establish that Mr. Hueske has any specialized knowledge about the identification of stab wounds or pathology.

16. Mr. Hueske is well known in the field of shooting reconstruction.

17. Tarrant County has used Mr. Hueske as a crime reconstruction expert for shootings.

18. There is no evidence that Mr. Hueske has an advanced degree regarding pathology or the identification of stab wounds.

19. Mr. Hueske's affidavit that he has "attended numerous forensic society meetings where the topic of knife wounds was presented and discussed" is not sufficient to establish that Mr. Hueske has specialized training in the study and identification of stab wounds.

20. There is no evidence that Mr. Hueske has ever presented a paper on the identification of stab wounds.

21. There is no evidence that Mr. Hueske has ever taught a class regarding the identification of stab wounds.

22. There is no evidence that Mr. Hueske has ever been published regarding the identification of stab wounds.

23. There is no evidence that Mr. Hueske has ever written or produced a training video on the

identification of stab wounds.

24. There is no evidence that Mr. Hueske has ever testified before regarding the identification of stab wounds.

25. Mr. Hueske does not list on his website that identification of stab wounds is an area of his expertise.

26. There is no evidence that Mr. Hueske is an expert in the field of pathology or the identification of stab wounds.

27. There is no evidence that Mr. Hueske has the ability to identify whether a stab wound has been made by a particular knife.

28. The medical examiner stated in his report that "[t]he ends appear pointed" in his description of the wounds.

29. Mr. Hueske states that the fact that the wounds have "pointed ends" proves that the wounds were made by a double-edged blade.

30. There is no evidence, or explanation, as to what photographs Mr. Hueske looked at to develop his opinion.

31. Wounds #1, #2, #7, have blunt edges and match Mr. Hueske's test impressions of the knife blade in question.

32. Wounds #1, #2, and #7 appear to be caused by a single-edged knife like the one tested by Mr. Hueske.

33. The victim's other wounds have "pointed ends."

34. There is authority that "pointed ends" "[d]o not necessarily indicate that a knife with two sharp edges was used, as the skin often splits behind the blunt edge to produce a symmetrical appearance."

35. There is authority that a single-edged blade can make the wounds with "pointed ends."

36. There is no credible evidence that the victim's wounds could not have been made by a single-edged blade.

37. There is no credible evidence that counsel would have discovered the butterfly knife was not the murder weapon had additional investigation been done.

38. There is no evidence that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel investigated the butterfly knife more.

(Id. at 338-42, 356.)

Based on its findings, and applying the *Strickland* standard, the state habeas court concluded that petitioner failed to prove that counsel's investigation into the butterfly knife constituted deficient representation or that there existed a reasonable probability that the result of petitioner's trial would have been different had counsel done more investigation regarding the knife. (Id. at 351-52.) The Texas Court of Criminal Appeals, in turn, denied relief based on the state habeas court's findings.

Under state law, an expert may be "qualified as an expert by knowledge, skill, experience, training, or education" to give an expert opinion. TEX. R. EVID. 702. The degree of education, training, or experience that is required for a witness to be qualified as an expert depends on several factors, including "the complexity of the field about which he proposes to testify"; the conclusiveness of the expert's opinion; and how dispositive the expert's testimony is to the central issue(s) in the case.

*Rodgers v. State,* 205 S.W.3d 525, 528 (Tex. Crim. App. 2006).
Petitioner has not shown by clear of convincing evidence that the
state courts' factual findings are erroneous and not subject to
deference under § 2254(e)(1). And, having reviewed Hueske's
credentials, his article on knife impressions, and his affidavit,
the state courts' finding that his background demonstrates a lack
of specialized knowledge, education, training, or experience to
qualify him as an expert in stab wounds was not unreasonable.
Thus, relying on the presumptive correctness of the state courts'
factual findings, the state courts' adjudication of petitioner's
ineffective-assistance claim comports with *Strickland.*

     For the reasons discussed herein,

     The court ORDERS that petitioner's petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,
denied. The court further ORDERS that a certificate of
appealability be, and is hereby, denied, as petitioner has not
made a substantial showing of the denial of a constitutional
right.

     SIGNED November ___8___, 2017.

                              JOHN MCBRYDE
                              UNITED STATES DISTRICT JUDGE


12